UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Sandra Cardenas, | |
| Plaintiff, | Case No. 14 C 3887 |
| v. | |
| First Midwest Bank, | Judge John Robert Blakey |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sandra Cardenas, who is deaf, brought this action against her former employer, First Midwest Bank. Plaintiff asserts the following claims: (I) discrimination in violation of Title I of the Americans with Disabilities Act ("ADA"); (II) retaliatory discharge under Illinois law; (III) retaliation in violation of Title I of the ADA; and (IV) retaliation in violation of the Family and Medical Leave Act ("FMLA"). Defendant moved to dismiss Counts II, III, and IV under Federal Rule of Civil Procedure 12(b)(6) [22]. That motion is granted in part and denied in part as explained below.

**I. Background[1]**

First Midwest Bank ("First Midwest") is a community bank with approximately 100 locations and more than 500 employees. [18] ¶¶ 1-2. Plaintiff, who worked at First Midwest from June 2006 through March 2014, is profoundly deaf and has been since she was an infant. *Id.* ¶ 64. During her time at the bank,

---
[1] The Background Section is based upon the well-pleaded factual allegations of the Amended Complaint [18] and the related documents properly before this Court. The facts are accepted as true solely for the purpose of this motion.

Plaintiff worked as a Lockbox Clerk in three different job grades – I, II and III. *Id.* ¶¶ 3, 13-14, 41.

Plaintiff began working part-time at First Midwest as a Lockbox Clerk I on June 18, 2007. *Id.* ¶ 11. Based on her superior job performance, computer skills, performance of extra duties, and training of her coworkers, Plaintiff was promoted to Lockbox Clerk II (part-time) in January 2008, where she continued to excel and perform faster and better than others at that job grade. *Id.* ¶¶ 13-14. Despite performing better than her grade II coworkers; other, non-disabled employees were promoted to Lockbox Clerk III instead of Plaintiff. *Id.* at 15. This occurred even though her coworkers had been with the company for a shorter period of time and processed far fewer items per hour than Plaintiff. *Id.* ¶¶ 14-15. Plaintiff thus claims that she was denied a promotion and that she therefore was not paid as much as less-qualified, non-disabled coworkers. *Id.* ¶ 16.

At some point in 2009, Plaintiff was approved for intermittent FMLA leave due to head pain, neck pain, and surgery to remove a non-functioning cochlear implant. *Id.* ¶¶ 47-48. Plaintiff claims she was retaliated against for taking that leave. *Id.* ¶ 49. She alleges that she was subjected to unfair discipline, had her hours cut, and was held to a different standard than her coworkers. *Id.* She also alleges that, as explained below, she was passed over for a number of promotions after going on FMLA leave.

In October 2010, Plaintiff sought to move to a full-time position as a Deposit Documentation Specialist II, a position whose description did not include talking on

the telephone. *Id.* ¶¶ 17-18. Plaintiff contacted Human Resources at First Midwest and was initially told that she could apply for the job. *Id.* ¶¶ 19-20. First Midwest, however, later refused to hire Plaintiff for the position, stating that the job required telephone use. *Id.* ¶¶ 20-21. First Midwest refused to provide Plaintiff with an accommodation regarding telephone use. *Id.* ¶ 21.

In January 2011, Plaintiff applied for the position of Deposit Documentation Support Clerk I – a position for which she was qualified – and whose job description also did not include talking on the telephone. *Id.* ¶¶ 22-23. First Midwest told Plaintiff that the job required her to be able to converse on the phone, refused to interview her for the position, and refused Plaintiff's request for an accommodation regarding telephone use. *Id.* ¶¶ 24-25. In May 2011, Plaintiff again applied for the position of Deposit Documentation Specialist II. *Id.* ¶ 28. First Midwest refused to interview or consider Plaintiff for the position, informing her that her application had been submitted one day late; however, the job remained posted and unfilled two months after the claimed cutoff date. *Id.* ¶¶ 30-31.

In May 2011, Plaintiff learned that several of her coworkers were promoted to Lockbox Clerk III years ago, despite less seniority and lower production rates. *Id.* ¶¶ 33-34. Plaintiff asked if this was because she was deaf, and received no response from First Midwest. *Id.* ¶ 38. In July 2011, one of the employees promoted ahead of Plaintiff was again promoted, this time to supervisor. *Id.* ¶ 39. On July 19, 2011, after realizing that she had been treated differently, passed up for promotions, and paid less than similarly situated coworkers, Plaintiff filed an

EEOC charge ("Charge I"). *Id.* ¶ 40. It was only after this filing that First Midwest offered Plaintiff the Lockbox Clerk III job grade. *Id.* ¶ 41.

After filing Charge I, Plaintiff claims that she was retaliated against, including being unfairly disciplined and segregated from her coworkers, having her hours cut, and being held to higher and different standards than her coworkers. *Id.* ¶ 46. Plaintiff alleges she was also harassed and treated differently than her hearing coworkers. *Id.* ¶ 43. This included being disciplined for communicating with coworkers about the terms and conditions of the workplace. *Id.* ¶ 44.

In 2013, Plaintiff's intermittent FMLA leave expired and she applied for additional leave. *Id.* ¶ 50. Plaintiff's request was denied because she had not worked the required number of hours per year to qualify for FMLA leave. *Id.* ¶ 51. Plaintiff alleges, however, that she had been wrongfully denied promotions to three full-time positions that would have allowed her to work an adequate number of hours to qualify for FMLA leave. *Id.* ¶ 52.

That same year, Plaintiff's head and neck pain worsened, and her doctor recommended that she alter her work hours. *Id.* ¶ 53. Plaintiff asked for an accommodation based on her head and neck pain and submitted a written request to First Midwest.[2] That request was initially refused, but later agreed to on February 26, 2014. *Id.* ¶¶ 54-55. In the meantime, Plaintiff's doctor instructed that Plaintiff could not go back to work until released to do so. *Id.* at 56. Plaintiff informed First Midwest of this instruction and was placed on an unpaid medical

---

[2] This pain was caused by an underlying spinal injury that was due to Plaintiff's working position of being seated, head bent at a sharp angle, during the entire workday. *Id.* ¶¶ 47, 58.

4

leave of absence beginning on February 16, 2014. *Id.* ¶¶ 56-57. The Amended Complaint does not state how Plaintiff received an accommodation on 2/26/2014 when she was on leave at that time (beginning 2/16/2014).

On March 14, 2014, after two plus weeks of leave, Plaintiff informed First Midwest that she intended to file a claim for workers' compensation due to the underlying spinal injuries that resulted in her head and neck pain. *Id.* ¶ 58. At that time, Plaintiff was still not released to return to work. *Id.*

On March 21, 2014, First Midwest terminated Plaintiff. *Id.* ¶ 59. Plaintiff alleges that, among other things, her termination was in retaliation for her expressed intent to file a workers' compensation claim. *Id.* After her termination, Plaintiff filed her second EEOC Charge ("Charge II") on June 3, 2014. *Id.* at Ex. C. In Charge II, Plaintiff alleged that she experienced retaliation after she filed Charge I, and that her treatment and termination were either discriminatory based on her disability or in retaliation for filing Charge I. *Id.*

## II. Legal Standard

Under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the Plaintiff, accept as true all well-pleaded facts and draw reasonable inferences in her favor. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Statements of law, however, need not be accepted as true. *Yeftich*, 722 F.3d at 915. Rule 12(b)(6) limits this Court's consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the

complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

To survive a motion under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Yeftich*, 722 F.3d at 915. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A well-pleaded complaint may proceed even if it appears that "actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2009). Tersely put, "[s]upplying details is not the function of a complaint." *Alliant Energy Corp. v. Bie*, 277 F.3d 916, 920 (7th Cir. 2002).

### III.  Analysis

#### A.  Count II: Illinois State Law Retaliatory Discharge

Defendant's Motion to Dismiss is denied with regard to Count II because Plaintiff has alleged facts sufficient to state a plausible claim for relief. *See Yeftich*, 722 F.3d at 915; *Long*, 182 F.3d at 554. With some exceptions, an employer may discharge an at-will employee for any reason or for no reason at all. *Fellhauer v. City of Geneva*, 141 Ill. 2d 495, 505 (Ill. 1991); *Hartlein v. Ill. Power Co.*, 151 Ill. 2d 142, 159 (Ill. 1992). One exception is the tort of retaliatory discharge, which guards against "discharges committed in retaliation for an employee's pursuit of a workers' compensation claim." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 767 (7th Cir. 2013); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181 (1978); *Hartlein*, 151 Ill. 2d at 159. In

6

that regard, an employee may adequately plead retaliatory discharge if she pleads facts showing that: (1) she was discharged because of her "activities" relating to the Act, and (2) the discharge contravened public policy. *De Marco v. Pals Exp., Inc.*, No. 96 C 6817, 1997 WL 619829, at *11 (N.D. Ill. Sept. 30, 1997); *Wolcowicz v. Intercraft Indus. Corp.*, 478 N.E.2d 1039, 1042 (Ill. App. Ct. 1985).

### i. Causation

With regard to the first prong (causation), "the ultimate issue is the employer's motive in discharging the employee." *Michael v. Precision Alliance Grp., LLC*, 21 N.E.3d 1183, 1188 (Ill. App. Ct. 2014). Illinois courts, however, have found that the "issue of an employer's true motive in terminating an employee is a question of fact." *Zuccolo v. Hannah Marine Corp.*, 900 N.E.2d 353, 359 (2008). As such, the ultimate question of causation "cannot be resolved on the pleadings." *Brooks v. Pactiv Corp.*, 729 F.3d 758, 768 (7th Cir. 2013). Instead, the Court's sole determination is whether Plaintiff sufficiently alleged facts supporting causation. Here, accepting all of Plaintiff's allegations as true, the circumstances surrounding her termination plausibly suggest that Plaintiff's expressed intent to pursue a workers' compensation claim motivated First Midwest to fire her.

Plaintiff claims that she had suffered from head and neck pain since 2009. [18] ¶ 47. In 2013, this pain worsened and, in February 2014, Plaintiff was told by her doctor that she could not go back to work until released to do so. *Id.* ¶¶ 54-56. After Plaintiff informed First Midwest of her doctor's instruction, First Midwest placed Plaintiff on an unpaid medical leave of absence beginning on February 16,

2014. *Id.* ¶¶ 56-57. Plaintiff was not terminated at that time. On March 14, 2014, Plaintiff informed First Midwest that she intended to file a claim for workers' compensation due to the underlying spinal injuries that caused her head and neck pain. *Id.* ¶¶ 58-59. Five business days later, Plaintiff was terminated. *Id.* ¶¶ 58-59. She alleges that her termination was in retaliation for her expressed intent to file a claim for workers' compensation. *Id.* ¶ 59. This is sufficient to plead causation because: (1) the Plaintiff was on medical leave for several weeks but was only fired once she indicated she would file for workers' compensation; and (2) Plaintiff was fired only a short time after stating that she would file for workers compensation. *See Zuccolo*, 900 N.E.2d at 360 (period of several weeks between protected conduct and termination was sufficient to find causation).

Defendant's argument that this case should be dismissed because Plaintiff alleged a valid reason for termination – no medical clearance – is unavailing. At this stage, it is very much in dispute whether First Midwest's supposed reason for terminating Plaintiff was valid. Regardless, the "mere existence of a valid or sufficient reason [for termination] does not defeat a retaliatory discharge claim." *Brooks*, 729 F.3d at 767-68 (quoting *Siekierka v. United Steel Deck, Inc.*, 868 N.E.2d 374, 380 (Ill. App. Ct. 2007)). "Even if the employer has an arguably valid basis for firing an employee, it may still be liable for retaliatory discharge if the actual motivation for the termination was the employee's pursuit of a workers' compensation claim." *Brooks*, 729 F.3d at 768. The issue of why Plaintiff was terminated is a factual issue that should not be determined at this stage. Accepting

8

Plaintiff's allegations as true, as we must, the circumstances surrounding the termination plausibly suggest that Plaintiff's discharge was motivated by her indicated intent to file a workers' compensation claim. Whether Plaintiff was actually fired because she was medically unable to return to work is a factual matter that is more appropriate for summary judgment or trial.

### ii. Contravention of Public Policy

Plaintiff has also adequately pled that her termination was in violation of public policy. In Illinois, it is in contravention of public policy to preemptively fire an employee to prevent her from exercising a right under the Workers' Compensation Act. *Wolcowicz*, 478 N.E.2d at 1042. As explained above, Plaintiff has alleged facts showing just that, and her Complaint therefore survives Defendant's Motion to Dismiss with regard to Count II.

### B. Count III: ADA Retaliation

Under Count III, Plaintiff alleges that she was retaliated against for filing her EEOC Charge I on July 19, 2011. [18] ¶¶ 40, 46. According to Plaintiff, Defendant retaliated against her by unfairly disciplining her, segregating her from her coworkers, cutting her hours, holding her to a higher and different standard than her coworkers, and ultimately terminating her. *Id.* ¶ 46, 60. Defendant's Motion to Dismiss that Count is granted because Plaintiff has failed to allege the requisite dates, or particular time periods, in which the specific adverse actions occurred. Additionally, Plaintiff failed to sufficiently allege causation.

#### i. Timeliness

"In Illinois, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice." *Kozmer v. United Airlines, Inc.*, No. 02-cv-2726, 2002 WL 31455977, *1-2 (N.D. Ill. Oct. 31, 2002). Each discrete discriminatory act starts a new clock for filing charges alleging that act. *Prince v. State Dep't of Rev.*, No. 09-cv-5967, 2010 U.S. Dist. LEXIS 84915, *1 *11 (N.D. Ill. Aug. 2, 2010). Failure to specifically allege the dates on which the unlawful employment practices occurred may result in dismissal, as that failure may prevent the court from determining whether the alleged misconduct falls within the three hundred day period. *Id.* at *4.

In *Prince v. State Dep't of Rev.*, plaintiff alleged that his employer took retaliatory actions as a result of his complaints of disability discrimination. *Id.* Plaintiff claimed that he was denied promotions and pay-step increases, that his work was scrutinized more than his coworkers, and that he was disciplined and written up. *Id.* The court found that plaintiff failed to specify when the employer engaged in the discriminatory actions; therefore, the court was unable to discern whether his claims were timely asserted and it granted defendant's motion to dismiss. *Id.* at *11; *see also Kozmer*, 2002 WL 31455977, at *2 (granting defendant's motion to dismiss where plaintiff did "no more than provide broad ranges of possible dates of discrimination").

Based on the Amended Complaint [18] here, it is unclear whether certain alleged adverse employment actions occurred within the three hundred day

10

limitation window. As to Charge II, the three hundred day limit would permit Plaintiff to complain of alleged ADA retaliation that occurred between August 7, 2013 and June 3, 2014. The Amended Complaint alleges that this includes Plaintiff's termination, which happened on March 21, 2014. *Id.* ¶ 59. Plaintiff fails, however, to include the particular dates on which the other materially adverse employment actions took place. *See id.* at Ex. C. For instance, Plaintiff alleges that she was harassed, disciplined unfairly, treated differently than her coworkers, denied raises and promotions, denied reasonable accommodations, segregated from her coworkers, and had her hours cut. *Id.* ¶¶ 42-46, 86. Nevertheless, Plaintiff has failed to mention the dates, or even time period, in which any of those actions took place. *Id.*

That lack of clarity makes it impossible for the Court to determine the timeliness of the alleged misconduct. *See Kozmer*, 2002 WL 31455977, at *2. The Court will therefore grant Defendant's Motion to Dismiss Count III with leave for Plaintiff to replead the specific dates of the adverse employment actions.

### ii. Causation

The Court also notes that the Plaintiff has failed to plead facts sufficient to plausibly claim that a causal connection exists between the protected activity – her EEOC Charge I – and the adverse action taken. To state a claim for ADA retaliation, the plaintiff may proceed under the direct or indirect method of proof. *Dickerson v. Bd. of Trustees of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Here, it appears that Plaintiff is proceeding under the direct method of

proof. *See* [18] at ¶¶ 84-88. As such, she must allege the following: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) a causal link between the protected activity and the adverse action. *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 690 (7th Cir. 2010). To show causation, Plaintiff "must show that her protected activity was a 'substantial or motivating factor' behind the adverse employment action." *Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 495 (7th Cir. 2014).

Here, Plaintiff fails to plead facts that provide a causal link between Plaintiff's Charge I and: (1) her termination; or (2) the imposition of different terms and conditions of work compared to her coworkers, unfair discipline, harassment, and creation of a hostile work environment. *See* [18] ¶ 46. For example, nearly three years of continuous employment elapsed between Plaintiff's filing of Charge I in July of 2011 and her termination in March of 2014. *See id.* at Ex. C. With regard to the other forms of retaliation (*i.e.*, terms of work, discipline, harassment, etc.), it is unclear when exactly those incidents occurred. To the degree Plaintiff's assertions regarding causation constitute pure legal conclusions unsupported by factual allegations, they are insufficient. *Id.* ¶¶ 46, 60. Further, it appears that any of the above adverse actions that occurred within the 300 day window (8/7/2013-6/3/2014) would be more than two years removed from the filing of Charge I (7/19/2011). As such, the temporal relationship alone may not be enough to prove causation, and additional facts are needed in support.

As mentioned above, however, the Court will allow leave to replead this Count to include specific dates. In the amended complaint, Plaintiff should also consider whether it can plead additional facts showing causation.

## C. Count IV: FMLA Retaliation

With regard to Count IV, Defendant's Motion to Dismiss is granted in part and denied in part. To the extent Count IV relies on retaliation alleged to have happened in or after 2013, the Motion to Dismiss is granted because Plaintiff has failed to establish that she was an eligible employee at that time. To the extent Count IV relies on retaliation alleged to have occurred between 2009 and 2013, the Court finds that Plaintiff has alleged facts sufficient to survive Defendant's Motion to Dismiss.

### i. Eligible Employee

To show a violation of FMLA rights, Plaintiff must first show that she is eligible for FMLA protection. *Daugherty v. Wabash Ctr. Inc.*, 577 F.3d 747, 750 (7th Cir. 2009). An "eligible employee" is "an employee who has been employed . . . for at least 12 months by the employer," and who has logged "at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). Plaintiff's approved FMLA leave expired in 2013, and Plaintiff then reapplied for intermittent FMLA leave. [18] ¶ 50. Plaintiff admits that she did not work the number of hours required to qualify for FMLA leave at that time (2013), and states that First Midwest's wrongful denial of promotions to a full-time position kept her from working the hours necessary to become FMLA eligible. *Id.* ¶¶ 51-52.

13

Regarding Plaintiff's retaliation claim for events in 2009, there is no question that she was eligible; thus, the eligibility issues presented here are solely related to the claimed misconduct in 2013. *Id.* ¶¶ 48-49. The right of family leave is conferred only upon employees who have worked at least 1,250 hours in the previous 12 months – this is a bright line requirement with no "close enough" exception. *Weidner v. Unity Health Plans Ins. Corp.*, 606 F. Supp. 2d 949, 958 (W.D. Wis. 2009); *see Pirant v. United States Postal Service,* 542 F.3d 202, 206 (7th Cir. 2008) (plaintiff who fell short of 1,250 hours by between .2 and 1.2 hours was not an eligible employee under the FMLA). Further, Plaintiff has not offered any authority for an exception to this rule where Plaintiff fails to meet the 1,250 hour threshold due to Defendant denying a promotion in violation of the FMLA. Thus, because Plaintiff did not work the requisite number of hours, she was not an eligible employee under the FMLA in 2013. Defendant's Motion to Dismiss Count IV is granted to the extent Count IV relies on alleged misconduct by the Defendant in or after 2013.

### ii. Failure to State a Claim

As to Plaintiff's FMLA claim concerning conduct that occurred between 2009 and 2013, the Court finds that Plaintiff has adequately stated a claim for retaliation. In making out a charge of retaliation under the FMLA, a plaintiff may proceed under the direct or indirect method of proof. *Burnett v. LFW, Inc.*, 472 F.3d 471, 481 (7th Cir. 2006) (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004)). To establish an FMLA retaliation claim under the direct method,

Plaintiff "must present evidence of (1) a statutorily protected activity; (2) a materially adverse action by the employer; and (3) a causal connection between the two." *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 670 (7th Cir. 2011); *see Malin v. Hospira, Inc.*, 762 F.3d 552, 562 (7th Cir. 2014). Defendant argues that Plaintiff has failed to properly plead elements two (adverse action) and three (causation). The Court disagrees.

### 1. Adverse Action

Defendant argues that Plaintiff's FMLA claim concerning conduct that occurred in 2009 – (unfair discipline, cutting of hours, and holding her to higher performance standards than coworkers) – does not allege an adverse employment action. [18] ¶¶ 49, 50, 61. An adverse job action must be "materially adverse, meaning more than a mere inconvenience or an alteration of job responsibilities." *Ribando v. United Airlines, Inc.*, 200 F.3d 507, 511 (7th Cir. 1999). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.*; *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").

In *Malin v. Hospira, Inc.*, plaintiff brought a FMLA retaliation claim against her employer following a suit of sexual harassment. 762 F.3d at 554. After her sexual harassment suit, plaintiff applied for several promotions but received none of them. *Id.* at 555. Plaintiff was also denied a salary grade increase. *Id.* at 556. The court found that failing to promote an employee and denying a salary increase were adverse employment actions. *Id.* at 562-63.

Given the above, Plaintiff has adequately pled an adverse action. As in *Malin*, Plaintiff has alleged that she was denied promotions that she had earned based on her seniority in the company and the number of items she processed per hour. 762 F.3d at 555; *see* [18] ¶ 15-27. Further, Plaintiff alleges that she was wrongfully denied the opportunity to move to a full-time position – Deposit Documentation Specialist II – in October 2010 and May 2011, analogous to the denial of a salary increase for the plaintiff in *Malin*. 762 F.3d at 556; *see* [18] ¶¶ 17-20, 28-31. Finally, Defendant alleged that she was subject to unfair discipline, a reduction of hours, and higher employment standards – all of which could have directly affected her employment standing with First Midwest by influencing her ability to attain more favorable positions. [18] ¶¶ 49, 50, 61. Thus, Plaintiff has satisfied the second prong of the test for a FMLA retaliation claim.

### 2. Causation

Defendant additionally argues that Plaintiff has failed to plead causation with regard to Count IV. To show causation under the FMLA, the Plaintiff may show a "convincing mosaic of circumstantial evidence" permitting the inference of a

16

causal connection between the protected activity and the adverse employment action. *Pagel v. TIN, Inc.*, 695 F.3d 622, 631 (7th Cir. 2012); *Burnett*, 472 F.3d at 481. The "convincing mosaic of circumstantial evidence may include suspicious timing, ambiguous statements from which retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Pagel*, 695 F.3d at 631. Here, Plaintiff successfully alleges facts that create a "convincing mosaic of circumstantial evidence" supporting her allegation of FMLA retaliation. *Id.*; *see* [18] ¶¶ 26, 27, 36.

Plaintiff began taking intermittent FMLA leave in 2009. [18] ¶¶ 47-48. She alleges that, thereafter, she was retaliated against for exercising her rights under the FMLA when she was subject to unfair discipline, had her hours cut, and was held to different standards than her co-workers. *Id.* ¶ 49. Additionally, Plaintiff has alleged that in October 2010 and May 2011, while she was taking intermittent FMLA leave, she sought a full-time position as a Deposit Documentation Specialist II. *Id.* ¶¶ 17-18, 28. On both occasions, Plaintiff was qualified for the position and, in October 2010, the position's description did not include talking on the telephone. *Id.* ¶¶ 18-19, 29. In October 2010, Plaintiff was initially told that she could apply for the job, but was later told that she could not apply because the job required telephone use. *Id.* ¶¶ 19-20. In May 2011, First Midwest refused to interview Plaintiff, stating that her application had been submitted one day late. The job, however, was still posted and unfilled two months after the date that First Midwest claimed was the cutoff date. *Id.* ¶¶ 30-31.

In May 2011, Plaintiff also learned that coworkers – whose performance was lower than hers – had been promoted to Lockbox Clerk III, while she remained at Lockbox Clerk II. *Id.* ¶¶ 33. These coworkers had less seniority and lower production rates than Plaintiff, and also did not have the computer skills that Plaintiff possessed. *Id.* ¶¶ 34-35. Plaintiff alleges that she was even asked by First Midwest to train two of those coworkers, despite the fact that they had been promoted to higher positions than Plaintiff and were paid more. *Id.* ¶ 36.

In January 2011, in between Plaintiff's two attempts to enter a full-time position as a Deposit Documentation Specialist II, Plaintiff further alleges that she attempted to apply for another position – Deposit Documentation Support Clerk I – whose job description also did not include talking on the telephone. *Id.* ¶ 22. Again, Plaintiff was qualified for the position, but First Midwest refused to interview her, stating that the job required her to be able to converse on the phone. *Id.* ¶¶ 23-24. Two employees – one who worked in the department and another who was eventually hired for the position – confirmed to Plaintiff that the job, in fact, did not require telephone use. *Id.* ¶ 26. When Plaintiff later relayed this information to First Midwest and asked for an explanation, she was ignored, except that First Midwest demanded to know who had told her this. *Id.* ¶ 27.

Drawing all inferences in Plaintiff's favor, the above timeline of events – all of which occurred while Plaintiff was taking FMLA leave – alleges a sufficient mosaic of circumstantial evidence to show a causal connection between the protected activity taken by Plaintiff and the materially adverse action taken by

18

First Midwest.  As such, Plaintiff has adequately pled her claim under the FMLA with regard to events occurring between 2009 and 2013.  Defendant's Motion to Dismiss is therefore denied with regard to those events.

**IV.    Conclusion**

In light of the foregoing, Defendant's Motion to Dismiss is granted in part and denied in part as follows: (1) Defendant's Motion to Dismiss Count II is denied; (2) Defendant's Motion to Dismiss Count III is granted without prejudice, and Plaintiff is given leave to file an amended complaint addressing the issues noted in this Opinion; and (3) Defendant's Motion to Dismiss Count IV is granted as to the alleged retaliatory events occurring after 2013, it is denied with regard to the alleged events occurring between 2009 and 2013.

IT IS SO ORDERED

Dated: July 7, 2015

_____
John Robert Blakey
United States District Judge